[No. B006264. Second Dist., Div. Five. Feb. 7, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL WESLEY, Defendant and Appellant.

COUNSEL

B. W. Minsky for Defendant and Appellant.

John K. Van de Kamp, Attorney General, William R. Weisman and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ASHBY, J.—By information appellant was charged in three counts with attempted murder in violation of Penal Code sections 664 and 187 (count I), assault with a deadly weapon on a peace officer in violation of Penal Code section 245, subdivision (b) (count II), and possession for sale of a controlled substance, "to wit, cocaine and heroin," in violation of Health and Safety Code section 11351 (count III).[1] By jury trial appellant was

---

[1] A fourth count alleging violation of Penal Code section 12021 was severed prior to trial and was ultimately dismissed.

acquitted of the assault and attempted murder charges, but was found guilty on count III of "possession for sale [of] a controlled substance, to wit, cocaine *or* heroin." (Italics added.)

On the evening of January 13, 1984, officers of the Torrance and Redondo Beach Police Departments, dressed in police jackets, served a search warrant at appellant's home in Gardena. After police knocked and announced their presence, appellant looked out the window then disappeared shouting, "It's the police." Hearing running footsteps the officers forced entry and found six people, including appellant, in or around the bathroom.[2] One officer heard the toilet flush. Upon his arrest appellant was found to have a paper bindle in his waistband with .37 grams of powder containing heroin.

On a table in the living room the police found the following:

Approximately 50 toy balloons, commonly used to package heroin.

Numerous plastic baggies and cutout corners of plastic sandwich bags, of the size and type commonly used to package controlled substances for sale.

A scale of the type typically used in selling heroin or cocaine.

A metal funnel with a white powder.

Two spoons.

A playing card and a plastic card of the type used to chop a powder to a finer consistency and to move the powder around on a smooth object in order to package or use it.

A white powder typically used as a diluting agent in the packaging and sale of controlled substances.

Finally, a mirror, on which there was a white powder and a white chunky substance, subsequently analyzed as .02 grams containing cocaine.

In the kitchen police also found two bottles of mannitol and inositol, which are powders used as cutting agents to dilute narcotics for sale.

In the opinion of expert narcotics officers, both the cocaine and the heroin were possessed for purposes of sale, based upon all the circumstances, par-

---

[2]There was substantial evidence that appellant attempted to fire a pistol, wrapped in a sweater, but the jury acquitted appellant of attempted murder and assault with a deadly weapon.

ticularly the close proximity of all the paraphernalia for packaging narcotics for sale.

The home was appellant's residence, as indicated by rent and financial documents found at the scene as well as by the telephone number given by appellant at booking. Two other suspects were also arrested, based upon observations that they dropped packages of cocaine to the floor.

## DISCUSSION

■ We may briefly dispose of appellant's suggestion that the evidence is legally insufficient to show that either the cocaine or the heroin was possessed for purposes of sale. Appellant misplaces reliance upon *People* v. *Leal* (1966) 64 Cal.2d 504 [50 Cal.Rptr. 777, 413 P.2d 665], which involved minute traces of residue, the precipitate resulting from reduction of the drug for use, a product completely useless to the drug abuser. (*People* v. *Morales* (1968) 259 Cal.App.2d 290, 295 [66 Cal.Rptr. 234] [distinguishing *Leal*].) Here both the cocaine and the heroin were in their normal form for personal use and with potential for sale. (*People* v. *Simmons* (1971) 19 Cal.App.3d 960, 966 [97 Cal.Rptr. 283].) Whether the cocaine or heroin was also possessed for purposes of sale was a factual question for the jury. (*People* v. *Sanford* (1968) 265 Cal.App.2d 960, 967 [71 Cal.Rptr. 790].) Appellant's contention that the amount of cocaine on the mirror was too small for sale ignores the evidence of the diluting agents and other paraphernalia for packaging for sale, as well as reasonable inferences that the occupants were interrupted in the process of packaging cocaine and had the opportunity to flush some evidence down the toilet. Substantial evidence supports the conclusion that either the cocaine or the heroin was possessed for purposes of sale. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *People* v. *Morales, supra,* 259 Cal.App.2d at pp. 294-295.)

The problem, however, is that under the peculiar wording of the pleading, the instructions, and the verdict in this case, it is impossible tell whether the jury based its verdict on appellant's dominion and control over the cocaine found on the table, or on the heroin found in his waistband, or that the jurors unanimously agreed as to which incident formed the basis for the verdict. The prosecution chose to allege in a single count that appellant possessed for sale a controlled substance, "to wit, cocaine *and* heroin." (Italics added.) The relevant jury instruction on the subject stated that "[e]very person who unlawfully possesses for sale any controlled substance, such as cocaine *or* heroin, is guilty of the crime of possession for sale of a controlled substance." (Italics added.) The verdict found appellant guilty of "Possession for sale [of] a controlled substance, to wit, cocaine *or* heroin,

a felony, in violation of Section 11351 Health and Safety Code, as charged in Count III of the information." (Italics added.)

██ The evidence disclosed two different ways in which appellant could have violated the single charge in count III of possession for sale of a controlled substance. In such circumstances the trial court must instruct, on its own motion even in the absence of the request, that the jurors must unanimously agree upon the particular act committed. (See CALJIC No. 17.01.) Otherwise, some of the jurors might base their verdict on the cocaine while the other jurors base theirs on the heroin, and the fundamental principle that a criminal conviction requires a unanimous jury verdict would be violated. (*People* v. *Crawford* (1982) 131 Cal.App.3d 591, 595-600 [182 Cal.Rptr. 536]; *People* v. *Madden* (1981) 116 Cal.App.3d 212, 215-219 [171 Cal.Rptr. 897].)

The circumstances in *People* v. *Crawford, supra,* were quite similar. The defendant was convicted of possession of a firearm by an ex-felon. Pursuant to a warrant, officers had arrested the defendant in his bedroom. One handgun was in a holster at the foot of the bed and another handgun was in the bedroom closet. A different defense as to each gun was presented at trial. The appellate court reversed because of the trial court's error in failing to instruct the jury on its own motion that the jurors must unanimously agree as to which one or more of the guns defendant possessed. "Here, an instruction similar to CALJIC No. 17.01 was essential to assure the constitutional guarantee of juror unanimity. Otherwise, certain jurors might have been convinced defendant possessed one weapon, while others were convinced he possessed another weapon without all jurors at a minimum believing he possessed any one weapon." (131 Cal.App.3d at pp. 595-596.)

If a unanimity instruction had been given, the ambiguity in the verdict might have been treated as a harmless technical defect, waived by appellant's failure to object at the time the verdict was announced. (See Witkin, Cal. Criminal Procedure (1963) § 546, pp. 556-557.) However, without the unanimity instruction, the verdict fails to resolve the ambiguity presented by the evidence. Under these circumstances, the conviction must be reversed. (*People* v. *McNeill* (1980) 112 Cal.App.3d 330, 335-336 [169 Cal.Rptr. 313].)

We feel compelled to repeat the advice given in *People* v. *McNeill, supra,* at page 335, that more careful attention by the prosecution to pleading, instructions, and verdict forms would have prevented this reversal.

In *McNeill,* the defendant was convicted on a single count of assault with a deadly weapon which named four different victims. The appellate court

reversed because no unanimity instruction was given, and commented, "The accusatory pleading was thus defective in alleging multiple offenses in one count [citation]. The defect constituted grounds to demur [citation]. However, by failing to demur, defendant waived objections to the defect [citations]. [¶] Unfortunately, the ramifications of this all too common error [charging multiple offenses in one count] extend beyond mere formal insufficiency of the pleading, a problem susceptible of easy solution in any event. This particular pleading blunder invariably creates complicated instructional problems which if not resolved at trial frequently compel reversal. Obviously, the surest and simplest way to avoid the problem and its likely consequences is by proper pleading in the first instance." (112 Cal.App.3d at pp. 334-335.)

Here, as in *McNeill,* the simplest way of avoiding this problem would have been to charge two separate counts, one for the cocaine and one for the heroin. (*People* v. *Mason* (1969) 276 Cal.App.2d 386, 389-390 [81 Cal.Rptr. 195].)[3]

The judgment is reversed.

Feinerman, P. J., and Eagleson, J., concurred.

---

[3]In light of our conclusion that the failure to instruct on unanimity requires reversal, we do not consider appellant's additional contention that the trial court erred in failing to instruct sua sponte on simple possession as a lesser included offense.