Opinion
 

 McINTYRE, J.
 

 Reginaldo Castaneda was charged with, and convicted of, one count of possession of a controlled substance—heroin. He contends his conviction must be reversed for a new trial because the trial court failed to give a unanimity instruction and the prosecutor was allowed to elicit testimony from a sheriff’s deputy that the typical heroin dealer is an Hispanic adult male. We agree, and reverse the judgment.
 
 [1]
 

 Factual and Procedural Background
 

 On May 4, 1995, about 6:15 a.m., nine members of the San Diego County Sheriff’s Department executed a search warrant at the Vista home of Castaneda’s ex-wife. Sheriff’s deputies had conducted surveillance on the home during the month of April, and had observed Castaneda there on two occasions. After entering the home, deputies found Castaneda in a bedroom sitting on the floor, and ordered him to roll over and put his hands behind his back. However, Castaneda resisted and three deputies struggled to subdue him. Eventually, the deputies were able to control and handcuff him. A deputy then took everything out of Castaneda’s pockets, which included keys, money, a wallet and pieces of paper, but not drugs or weapons. Also present in the home during the search were his ex-wife, Diane, their teenage son, Reggie, and their three younger children.
 

 Deputies searched the room where Castaneda had been arrested and found a small plastic bindle containing .07 grams of tar heroin taped to the back of a television set. On top of the television, they also found .02 grams of tar heroin, which was described as “minute” and hard to see—about the size of “the tip off of a real sharp pencil."
 

 Castaneda was transported to the Vista Sheriff’s Station and placed in a holding cell. One of Castaneda’s hands was cuffed to a pipe and the other
 
 *1070
 
 was left free. He was left alone in the room for 10 to 15 minutes before Deputy Richard Zuniga entered, asked him to stand for a search and took off the handcuff. The first place Zuniga searched was Castaneda’s right front coin pocket, where he found a plastic bindle containing 1.1 grams of tar heroin. Zuniga testified that Castaneda was “[sjhocked, surprised” when this happened.
 

 Zuniga further testified he had never had contact with Castaneda before, and did not plant any heroin on him. However, Castaneda’s attorney pointed out in his summation that deputies had not found any heroin when they emptied Castaneda’s pockets at the scene, and argued that if Castaneda had actually possessed the heroin in his coin pocket in the holding cell, he would have taken it out and swallowed it when he had the chance.
 

 Diane and Reggie both testified for the defense. Reggie testified that the heroin recovered from the television set was his. He said he and his friends were shooting heroin in the room the day before the search, that his mother caught him, and he fled. Diane testified that when she discovered her son and his friends injecting heroin, she called Castaneda and asked him to come over. Reggie testified that he returned home later that night and found Castaneda sleeping on the floor of the room where the heroin was found. Diane said at the time of the search, she and Castaneda had been separated for six or seven years and divorced for about three. Castaneda resided in her home during September, October and November 1994, while they were attempting to reconcile; however, he left in the end of November or beginning of December.
 

 Discussion
 

 The Trial Court’s Failure to Give CALJIC No. 17.01 Was Reversible Error
 

 Castaneda contends the court erred by failing to instruct sua sponte with CALJIC No. 17.01, which would have required the jury to unanimously agree on which act or acts constituted the offense of possession.
 
 [2]
 
 We agree.
 

 The evidence disclosed two different ways in which Castaneda could have violated the single charge of possession of a controlled substance.
 
 (People
 
 v.
 
 *1071
 

 Wesley
 
 (1986) 177 Cal.App.3d 397, 400-401 [223 Cal.Rptr. 9].) He could have constructively possessed the heroin found on the television set or actually possessed the heroin later recovered from his pocket at the sheriff’s station.
 

 These acts of possession were factually distinct
 
 (People
 
 v.
 
 Crawford
 
 (1982) 131 Cal.App.3d 591, 599 [182 Cal.Rptr. 536]), and Castaneda offered separate defenses to each act: (1) that the heroin found on the television was not his but his son’s, and (2) that he did not possess the heroin found in his coin pocket; rather it was planted or otherwise fabricated. Under these circumstances, the court was required to give CALJIC No. 17.01 sua sponte.
 
 (People
 
 v.
 
 Laport
 
 (1987) 189 Cal.App.3d 281, 283-284 [234 Cal.Rptr. 399] [CALJIC No. 17.01 required where different acts could have constituted the offense and separate defenses were offered for each act];
 
 People
 
 v.
 
 Wesley, supra, 111
 
 Cal.App.3d at pp. 400-401 [CALJIC No. 17.01 required where defendant charged with one count of possession, and cocaine was found in his home and heroin was recovered in his waistband];
 
 People
 
 v.
 
 Crawford, supra,
 
 131 Cal.App.3d at p. 599 [CALJIC No. 17.01 required where acts of possession were not factually identical].)
 

 As it was, some jurors could have found Castaneda guilty of possession based on the heroin found in his pocket, but had a reasonable doubt as to whether he possessed the heroin found on the television; while others could have thought the heroin in his pocket was planted (or otherwise had a reasonable doubt as to whether he knowingly possessed it) and based their guilty verdict on the heroin found on the television. Thus, all the jurors could have found Castaneda guilty of possession of a controlled substance without unanimously agreeing upon which act constituted the offense. This constitutes a violation of the right to a unanimous verdict in criminal cases.
 
 (People
 
 v.
 
 Laport, supra,
 
 189 Cal.App.3d at pp. 283-284; Cal. Const., art. I, § 16.) Of course it is possible that all 12 jurors agreed Castaneda possessed the heroin on the television, or the heroin in his pocket, or both. However, there is no way of knowing this; therefore, reversal is required.
 
 (People
 
 v.
 
 Laport, supra,
 
 189 Cal.App.3d at p. 284;
 
 People
 
 v.
 
 Wesley, supra,
 
 177 Cal.App.3d at p. 400;
 
 People
 
 v.
 
 Crawford, supra,
 
 131 Cal.App.3d at p. 600.) Furthermore, this error was compounded by the admission of testimony regarding the “typical heroin dealer,” discussed below.
 

 It Was Error to Allow the Prosecutor to Elicit Testimony From Zuniga Regarding the “Typical Heroin Dealer”
 

 The prosecutor elicited the following testimony from Zuniga: “In my experience, dealing particularly in Northern San Diego County and especially in Vista and San Marcos where I’m presently assigned to investigate,
 
 *1072
 

 the typical heroin dealer is usually Hispanic male adult.
 
 They are Mexican nationals. They are U.S. citizens. But in my opinion, that
 
 the tar heroin market in Northern San Diego County particularly in these two cities is controlled by Hispanics.”
 
 (Italics added.)
 

 Castaneda’s attorney objected to this line of questioning as irrelevant, but the objection was overruled. The Attorney General contends this ruling was correct because a piece of paper was found on Castaneda with the Spanish word “carga” on it, which is slang for heroin. We disagree. Zuniga’s testimony was “inherently prejudicial” and should have been excluded.
 
 (People v. Martinez
 
 (1992) 10 Cal.App.4th 1001, 1006 [12 Cal.Rptr.2d 838].)
 

 Castaneda perfectly fit Zuniga’s profile of the typical heroin dealer in Northern San Diego County: He is an Hispanic adult male and was arrested in Vista for possessing tar heroin. By Zuniga’s testimony, the jury was invited to infer that Castaneda was actually guilty of a crime even greater than charged, that of selling heroin. An inappropriate and dangerous implication of this evidence was: Do not let this man free; he may have done more than possess heroin—he may be a heroin dealer. However, every defendant has the right to be tried based on evidence tying him to the specific crime charged, and not on general facts accumulated by law enforcement regarding a particular criminal profile.
 
 (People
 
 v.
 
 Martinez, supra,
 
 10 Cal.App.4th at p. 1006; see also
 
 People
 
 v.
 
 Derello
 
 (1989) 211 Cal.App.3d 414, 426 [259 Cal.Rptr. 265].) Introduction of the latter evidence improperly invites a finding of guilt by association and undermines the defendant’s right to a fair trial.
 

 Disposition
 

 The judgment is reversed and the matter remanded for a new trial.
 

 Work, Acting P. J., and McDonald, J., concurred.
 

 [1]
 

 Castaneda makes several other contentions on appeal, which, given our holding, we do not address.
 

 [2]
 

 CALJIC No. 17.01 provides: “The defendant is accused of having committed the crime of [possession of a controlled substance]. The prosecution has introduced evidence for the purpose of showing that there is more than one [act] upon which a conviction [of possession of a controlled substance] may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that [he] committed any one or more of the [acts]. However, in order to return a verdict of guilty [to possession of a controlled substance], all jurors must agree that [he] committed the same [act] or [acts]. It is not necessary that the particular [act] or [acts] agreed upon be stated in your verdict.”