Filed 9/30/13  P. v. Lockwood CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055479 |
| v. | (Super.Ct.No. FSB1104250) |
| TRAVIS L. LOCKWOOD, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Bryan Foster, Judge.  Affirmed.

Correen W. Ferrentino, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant, Travis L. Lockwood, guilty of (1) possessing a destructive device or explosives on a public street (Former Pen. Code, § 12303.2); (2) possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)); and (3) possessing drug paraphernalia (Health & Saf. Code, § 11364, subd. (a)). The trial court sentenced defendant to prison for a term of two years, eight months. Defendant raises three issues on appeal. First, defendant contends the trial court erred by denying his motion to suppress evidence because the officers did not have a reasonable suspicion defendant was involved in criminal activity when they stopped him. Second, defendant asserts the trial court erred by permitting the prosecutor to present propensity evidence. (Evid. Code, § 1101, subd. (b).) Third, defendant contends the trial court made multiple instructional errors in relation to defendant's conviction for possessing drug paraphernalia. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

On September 12, 2011, at approximately 10:30 a.m., Redlands Police Officer Strobaugh was on patrol, in uniform, with Officer Herrera in a marked police car. Dispatch contacted the officers about a suspicious person near an elementary school. The person was identified as a white male, in his 30s, wearing a red T-shirt, black pants, and riding a bicycle. While traveling toward the school, Strobaugh saw a man (defendant) on a bicycle matching the description given by the dispatcher.

Upon seeing defendant, the officers blew their car's horn as defendant rode past them. Defendant looked backward toward the patrol car, lost control of his bicycle and fell down. Within seconds of falling, defendant reached into his pants pocket, took out

2

a handkerchief, and tossed it into a grassy area a few feet away. Strobaugh walked over to defendant and asked if he was okay. Defendant explained he lost control of his bicycle. Strobaugh asked defendant if he had any drugs or weapons on him. Defendant said he "had a couple pocketknives with him." Defendant also said he was on probation "for illegal fireworks."

Strobaugh asked to search defendant, and defendant agreed. During the search, Strobaugh found a glass pipe in defendant's front pants pocket. The pipe appeared to be used for smoking methamphetamine. Strobaugh also found pocketknives in defendant's underwear. Defendant agreed to let Strobaugh search the backpack he was wearing. In the backpack Strobaugh found another glass pipe.

Officer Herrera looked at the area where defendant threw the handkerchief. Inside the handkerchief, Herrera found a plastic baggie containing "a small tin case and then a white crystal substance also inside of the baggie." The substance was methamphetamine. Strobaugh handcuffed defendant and arrested him for possessing methamphetamine.

Strobaugh again asked defendant if he had anything illegal or anything that would hurt the officers, since defendant was about to be placed in the patrol car. Appearing confused, defendant asked the officers if he had any fireworks in his possession. Strobaugh patted defendant down again, but did not find anything. After placing defendant in the patrol car, Strobaugh walked over to defendant's bicycle, in order to secure it. Strobaugh noticed a sweatshirt tied to the bicycle's handlebars. Strobaugh looked in the sweatshirt pockets and found a pipe bomb. Strobaugh called

3

the bomb squad. Defendant admitted to Strobaugh that the item was a pipe bomb. Defendant explained that he found gunpowder in a friend's garage, took it home, and made the pipe bomb.

The bomb squad disposed of the pipe bomb. San Bernardino County Sheriff's Detective Scovel was a member of the bomb squad. In Scovel's opinion the device defendant possessed was a pipe bomb—it was not a firecracker.

On January 20, 2010, at approximately 12:35 p.m., Redlands Police Officer Estrada saw defendant on a bicycle near a middle school. Defendant agreed to let Estrada search his backpack. Estrada found an explosive device in defendant's backpack, which appeared to be a stick of dynamite. Estrada did not believe the item was a pipe bomb. Defendant told Estrada he thought the item was a firecracker, but defendant was unsure if it was "fake or real." Estrada arrested defendant.

**DISCUSSION**

A.      MOTION TO SUPPRESS EVIDENCE

1.      *PROCEDURAL HISTORY*

Prior to trial, defendant moved to suppress the evidence obtained by the police officers when they searched defendant on the street. Defendant asserted the officers "did not have legal cause to justify the detention or the search of [defendant's] property." The trial court held a hearing on the motion. Herrera testified that he and Strobaugh saw defendant riding his bicycle and noticed he matched the description given by the dispatcher. Defendant was traveling in the opposite direction of the police officers. Herrera tried to get defendant's attention by placing his hand out the window

4

of the patrol car; however, that did not get defendant's attention, so Herrera blew the patrol car's air horn. Herrera blew the horn in order to stop defendant, so that defendant would speak to the officers. Defendant looked back at the patrol car and fell down. Herrera watched defendant, through the vehicle's back window, throw the handkerchief; Strobaugh watched through the vehicle's side-view mirror.

When Strobaugh approached defendant he asked defendant if he was okay and if he needed medical help. Defendant said he lost control of his bicycle. Strobaugh asked defendant his name, date of birth, and whether he was on probation or parole. Defendant said he was on probation. A dispatcher also informed Strobaugh that defendant was on probation. Strobaugh did not ask the dispatcher if defendant had search terms as part of his probation.

Strobaugh asked for permission to search defendant and remove the knives defendant admitted possessing. Defendant consented. While performing the search, Strobaugh found a white cloth or sock with a pipe protruding from it in defendant's pocket. The top of the pipe was protruding from both the cloth and defendant's pocket. Strobaugh asked for permission to search defendant's backpack, and defendant consented. When searching the sweatshirt attached to the handlebars of defendant's bicycle, Strobaugh found a black felt bag inside the left pocket of the sweatshirt. Inside the bag, Strobaugh found the pipe bomb.

Defendant's trial attorney asserted that honking the air horn was akin to stopping a person by using the patrol car's flashing lights and sirens. The trial court found the honking of the air horn was not a command to stop, rather, it was "an attempt to gain

5

attention." The trial court reasoned that "defendant would have been free to continue riding his bike away, and it would not have been any grounds to stop him at that point." However, once defendant fell down, the police officers had a right to check on defendant's welfare and then a right to check the item defendant threw away from him. Further, the trial court found defendant freely gave his consent for the search that resulted in Strobaugh finding the pipe in defendant's pocket. As to the pipe bomb, the trial court concluded it was discovered during a valid inventory search. Accordingly, the trial court denied defendant's motion to suppress evidence.

2. *ANALYSIS*

Defendant contends the trial court erred by denying his motion to suppress evidence because the police officers did not have a reasonable suspicion that defendant was involved in criminal activity when they stopped defendant. The particular issue presented is whether the officers' use of the air horn and placing a hand outside the car window created a detention. We conclude the officers did not detain defendant by using a hand and air horn.

"'In ruling on a motion to suppress, the trial court finds the historical facts, then determines whether the applicable rule of law has been violated.' [Citation.] When we review the trial court's resolution of the motion to suppress, we 'defer to the trial court's factual findings, express or implied, where supported by substantial evidence.' [Citation.] However, we exercise our independent judgment in determining whether the search or seizure was reasonable under the Fourth Amendment. [Citation.]" (*People v. Dotson* (2009) 179 Cal.App.4th 1045, 1048-1049.)

6

"Unlike a detention, a consensual encounter between a police officer and an individual does not implicate the Fourth Amendment. It is well established that law enforcement officers may approach someone on the street or in another public place and converse if the person is willing to do so. There is no Fourth Amendment violation as long as circumstances are such that a reasonable person would feel free to leave or end the encounter. [Citations.]" (*People v. Rivera* (2007) 41 Cal.4th 304, 309.)

"'[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' [Citation.] This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation. [Citation.] Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled. [Citations.] The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred. [Citation.]" (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.)

The totality of the circumstances reflects an officer placed a hand outside the patrol vehicle and sounded the vehicle's air horn while traveling in the opposite direction of defendant. Defendant continued riding past the officers until he fell down.

7

Given that the officers did not command defendant to stop, follow behind him, display a weapon, or touch defendant there is nothing indicating the officers detained defendant. This is further supported by the fact that the officers watched defendant continue riding away. The officers did not turn the patrol car around or otherwise attempt to chase after defendant when he continued on his path. Given the totality of the circumstances, it appears the officers attempted to get defendant's attention in order to determine if he would want to engage in a consensual conversation—the officers' actions did not create a stop that a reasonable person would feel unable to leave.

Defendant asserts the record reflects the officers wanted to stop defendant because (1) the officers honked the air horn after holding a hand out the window proved to be ineffective in stopping defendant, and (2) Herrera testified that he wanted to stop defendant. Herrera's uncommunicated state of mind is irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred. (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 821.) Thus, the fact that Herrera wanted to stop defendant is not relevant, because we can only consider what was communicated between the officers and defendant.

The officers' act of blowing the air horn after holding a hand out toward defendant did not create a compulsion for defendant to stop. It appears from the evidence that the officers were only trying to obtain defendant's attention to determine if he would participate in a consensual conversation. The officers did not command defendant to stop or use the vehicle's lights or sirens to stop defendant. Thus, we are not persuaded by defendant's argument.

8

## B.  PROPENSITY EVIDENCE

### 1.  *PROCEDURAL HISTORY*

Prior to trial, the prosecutor moved to introduce evidence of defendant's prior misdemeanor conviction for possession of a destructive device for the sake of proving intent and knowledge.  (Evid. Code, § 1101, subd. (b).)  Defendant's trial attorney asserted the prior conviction would not help the prosecutor to prove knowledge in the instant case because the dynamite in the prior case was not similar to the pipe bomb in the current case.  Defendant's attorney asserted the devices were too dissimilar to prove defendant's knowledge about the pipe bomb.

The prosecutor argued that the prior conviction helped to prove defendant had "at least some level of awareness and understanding and sophistication with respect to explosive devices and that he's not supposed to have them."  Defendant's attorney asserted the prior conviction evidence was also problematic under an Evidence Code section 352 analysis because the devices were so dissimilar and the prior conviction would require several witnesses to testify, creating "a trial of the same magnitude of the trial" concerning the current charges.  The prosecutor said two or three witnesses would need to testify about the prior conviction, but the testimony would consume "less than ten minutes."

Defendant's attorney argued that the prior conviction was merely about possession and did not involve an element concerning defendant's mental state.  Therefore, defendant's attorney asserted the prior conviction could not be used in the instant case to prove recklessness or maliciousness.  The trial court asked the prosecutor

9

for an offer of proof concerning the prior conviction. The prosecutor described the evidence reflecting defendant was found on a bicycle with a destructive device in his backpack. The prosecutor also wanted to introduce statements defendant made during the prior encounter reflecting he knew the device was destructive or explosive.

The trial court ruled the prosecutor could present the prior offense evidence. The trial court held the prosecutor could present evidence about where the prior device was found and defendant's conduct at the time. The trial court reasoned that the details surrounding the prior offense would help put the prior conviction "in context." The trial court concluded the evidence would not be prejudicial to defendant because defendant admitted possessing the prior destructive device and consented to the prior search of his backpack.

2.      *ANALYSIS*

Defendant contends the trial court erred by permitting the prosecutor to present evidence of defendant's prior conviction (Evid. Code, § 1101, subd. (b)).[1] We disagree.

"'Evidence that a defendant has committed crimes other than those currently charged is not admissible to prove that the defendant is a person of bad character or has a criminal disposition; but evidence of uncharged crimes is admissible to prove, among other things, the identity of the perpetrator of the charged crimes, the existence of a

---

[1] Under the same point heading as this contention, defendant asserts the trial court erred by not informing the jury that defendant's prior offense was a misdemeanor and not the same crime as that charged in the instant case. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [separate point headings].) Defendant's argument on this point is one paragraph and does not cite law. Thus, we deem the issue to be forfeited. (*People v. Anderson* (2007) 152 Cal.App.4th 919, 929.)

common design or plan, or the intent with which the perpetrator acted in the commission of the charged crimes.  [Citation.]  Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent.  [Citation.]'  [Citation.]"  (*People v. Foster* (2010) 50 Cal.4th 1301, 1328.)  Prior offense evidence is also relevant to proving absence of mistake.  (See *People v. Escudero* (2010) 183 Cal.App.4th 302, 313.)

"'The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent.  [Citation.] . . .  In order to be admissible to prove intent, the uncharged conduct must be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance.'  [Citations.]" [Citation.]'  [Citation.]"  (*People v. Foster*, *supra*, 50 Cal.4th at p. 1328.)  As to lack of mistake, "'"[t]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . ."  [Citation.]"  (*People v. Escudero*, *supra*, 183 Cal.App.4th at p. 314.)

"If evidence of prior conduct is sufficiently similar to the charged crimes to be relevant to prove the defendant's intent . . . , the trial court then must consider whether the probative value of the evidence 'is "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  [Citation.]'  [Citation.]  'Rulings made under

11

[Evidence Code sections 1101 and 352] are reviewed for an abuse of discretion. [Citation.]' [Citation.] 'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." [Citation.]' [Citation.]" (*People v. Foster*, *supra*, 50 Cal.4th at pp. 1328-1329.)

In the prior case, defendant was riding a bicycle near a middle school and had dynamite in his backpack. In the current case, defendant was riding a bicycle away from an elementary school and had a pipe bomb in a sweatshirt pocket. The prior crime and charged crime are similar because they both involve defendant possessing a destructive, explosive device in a public area. Thus, the trial court could reasonably conclude the charged and uncharged crimes were factually similar and could infer the prior offense showed defendant was not mistaken about the pipe bomb being a firecracker, which would tend to show his malicious intent.

As to probative value, the uncharged offense was relevant to proving the charged crime of possessing a destructive device or explosive because the charged offense required proof that defendant's possession was reckless or malicious. (Former Pen. Code, § 12303.2.) "Malicious" means "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act." (Pen. Code, § 7, subd. (4).) Reckless behavior is that "'which is such a departure from the conduct of an ordinarily prudent person under the same circumstances as to demonstrate an indifference to consequences or a disregard of human life.' [Citation.]" (*People v. Medlin* (2009) 178 Cal.App.4th 1092, 1103.)

12

Defendant's past offense was relevant to showing defendant had previously been around explosives and had a level of knowledge about their destructive nature. In the current case, defendant originally referred to the pipe bomb as a firecracker. The prior offense evidence helped to prove defendant likely knew the pipe bomb was not a firecracker and therefore, he possessed the pipe bomb with a malicious or reckless intent because he knew the potential destructive nature of the bomb. Accordingly, the trial court could reasonably conclude the prior offense evidence had probative value.

In regard to the prejudicial effect of the prior crime evidence, the testimony about the prior crime was not lengthy. The officer who stopped defendant testified, and his direct testimony was brief. The detective who disposed of the dynamite also testified, and his testimony was also brief. Thus, the prior offense evidence did not consume an undue amount of time. Further, while the charged and uncharged offenses were similar, there were differences that would have allowed the jury to distinguish the crimes so as not to confuse them. For example, the prior offense involved dynamite, while the current offense involved a pipe bomb, and the offenses involved testimony from different police officers. Given the differences between the two crimes, it is unlikely a trier of fact would mistake the two offenses.

In sum, the prior crime evidence had probative value and a low risk of creating a prejudicial effect. Accordingly, we conclude the trial court acted within its discretion when granting the prosecutor permission to present the prior crime evidence.

Defendant contends the prior offense evidence was not probative because there was no dispute at trial about whether defendant knew the pipe bomb was an explosive device. Defendant's argument is not persuasive because the evidence reflects defendant originally referred to the pipe bomb as a firecracker. Thus, defendant could reasonably argue that he did not recklessly or maliciously possess the device because he did not appreciate the potentially destructive nature of the device.

Next, defendant asserts the prior conviction could not have helped to prove whether defendant recklessly or maliciously possessed the pipe bomb because the prior offense did not have a mental state as an element of the offense.[2] As set forth *ante*, maliciousness involves an intent to do a wrongful act. Defendant's prior offense involved him claiming that he did not know whether the dynamite was a "fake or real" firecracker. In the current case, defendant claimed the pipe bomb was a firecracker. When the crimes are brought together, the prior offense helps to show defendant acted with malice when carrying the pipe bomb in a public place—that he did not have an innocent belief that he was carrying a firecracker.

C.     JURY INSTRUCTION

1.     *PROCEDURAL HISTORY*

Strobaugh testified that, while speaking to defendant, he asked defendant whether he had consumed any methamphetamine. Defendant told Strobaugh, "he had smoked a couple hits of methamphetamine earlier that day." Strobaugh understood

---

[2] Defendant's prior conviction was for possession of a destructive device. (Former Pen. Code, § 12303.)

"hits" to mean "like puffs." Strobaugh showed defendant the pipe he found in defendant's front pants pocket and asked him if that was the pipe he used "to take the hits off of." Defendant "said it was." When searching defendant's backpack, Strobaugh found a second glass pipe that was similar to the one found in defendant's pants pocket.

The trial court gave the jury the following instruction concerning the drug paraphernalia charge: "The defendant is charged in Count 3 with possessing an object that can be used to unlawfully inject or smoke a controlled substance. [¶] To prove that the defendant is guilty of this crime, the People must prove that: First, the defendant possessed an object used for unlawfully injecting or smoking a controlled substance; second, the defendant knew it to be an object used for unlawfully injecting or smoking a controlled substance; and third, the defendant knew that the object could be used to unlawfully inject or smoke a controlled substance. [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it either personally or through another person." (CALCRIM No. 2410.)

2.    *ANALYSIS*

a)    Contentions

Defendant contends the trial court erred by not instructing the jury (1) that defendant had to know of the pipe's presence, and (2) on the law of unanimity.

b)    CALCRIM No. 2410

We begin our analysis of this issue with the instruction concerning the law of possessing drug paraphernalia. The People concede the trial court erred, but assert the error was harmless. We agree with the People. We note the statute at issue does not

15

include a knowledge requirement. The statute, in 2011, made it a crime "to possess an opium pipe or any device, contrivance, instrument, or paraphernalia used for unlawfully injecting or smoking (1) a controlled substance . . . ." (Health & Saf. Code, § 11364, subd. (a).) However, CALCRIM No. 2410 does include an element concerning knowledge of the paraphernalia's presence. The elements in the instruction are: "1. The defendant [unlawfully] possessed an object used for unlawfully injecting or smoking a controlled substance; [¶] 2. The defendant knew of the object's presence; [¶] AND [¶] 3. The defendant knew it to be an object used for unlawfully injecting or smoking a controlled substance." Given the language in the form jury instruction, we will assume the trial court erred by not instructing the jury that an element of the offense was defendant's knowledge of the paraphernalia's presence.

A trial court's failure to instruct the jury on an element of an offense is subject to harmless error review. (*People v. Flood* (1998) 18 Cal.4th 470, 502-503.) We must determine "whether it appears beyond a reasonable doubt that the error did not contribute to this jury's verdict. [Citations.]" (*Id.* at p. 504.) In performing this analysis we must consider whether "defendant contested the omitted element and raised evidence sufficient to support a contrary finding." (*People v. Mil* (2012) 53 Cal.4th 400, 417.) The error may be deemed harmless if "the omitted element was uncontested and supported by overwhelming evidence." (*Ibid.*)

Strobaugh testified that defendant admitted smoking from the pipe located in his pocket earlier that morning. Thus, it can be inferred defendant knew the pipe was in his pocket because he had used it earlier that day. The only defense witness who testified at

16

trial was Thomas Fee, a private investigator who specialized in fires and explosives. Fee's testimony concerned the explosives charge, not the drug paraphernalia charge.

During closing arguments, defendant's trial counsel argued, "I'm not worrying about the methamphetamine. Just like [defendant] did to the police officers, he told them exactly what that was. He admitted to use. He admitted that those were the pipes that he used to smoke it. He didn't try to hide the ball in any[]way, so I'm not worried about Charges 2 and 3, if you decide they've been demonstrated."

Given that defendant did not argue against the charge in Count 3 and the uncontradicted evidence supports a finding that defendant knew there was a pipe in his pocket because he had used it that same morning, we conclude any error on the part of the trial court was harmless beyond a reasonable doubt.

D.     UNANIMITY

We review alleged instructional errors de novo. (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.) "Unanimity instructions [citation] are required whenever more than one act could constitute the offense charged. [Citations.] The impetus for [unanimity instructions] is protection of the defendant's 'right to have the jury agree unanimously on the criminal act or acts which supported his conviction.' [Citation.]" (*People v. Robbins* (1989) 209 Cal.App.3d 261, 264.)

Nonetheless, there is an exception to this rule. A unanimity instruction is not required "when (1) 'the acts are so closely connected in time as to form part of one transaction,' (2) 'the defendant tenders the same defense or defenses to each act,' and (3) 'there is no reasonable basis for the jury to distinguish between them. [Citations.]'

17

[Citation.]" (*People v. Lueth* (2012) 206 Cal.App.4th 189, 196 [Fourth Dist., Div. Two].) In particular, the exception is meant to apply when all the crimes occur during a single transaction and "'are so closely related in time and place that the jurors reasonably must either accept or reject the victim's testimony in toto." [Citation.]' [Citation]" [Citation.]' [Citation.]" (*Ibid.*)

Defendant was found with the glass pipes at the same time, in the same place. Thus, the acts are closely connected in time, because they occurred at the same time. Defendant tendered the same defense to both acts. Defendant did not separate the pants-pipe from the backpack-pipe. Defendant essentially conceded the drug related charges by reminding the jury that he admitted using methamphetamine and telling the jury, "I'm not worried about Charges 2 and 3, if you decide they've been demonstrated." There was no reasonable basis for the jury to distinguish between the pants-pipe and the backpack-pipe because it would defy reason to believe Strobaugh and the photographs/photocopies of the pipes in relation to one of the pipes but not the other. In other words, the crimes were so close together in time that the jurors would have needed to accept the photocopies and testimony in toto or reject them entirely. Accordingly, the exception to the unanimity requirement is satisfied. Therefore, we conclude the trial court did not err by not instructing the jury on the law of unanimity.

Defendant compares his case to *People v. Castaneda* (1997) 55 Cal.App.4th 1067. In *Castaneda*, deputies searched the home of the defendant's ex-wife. The defendant was at the home during the search, but he did not live there. Deputies found a small bindle of heroin taped to the back of a television set and a "'minute'" amount of

18

heroin on top of the television. (*Id.* at pp. 1069-1070.) The defendant was searched and nothing was found in his pockets. (*Id.* at p. 1069.) Later, after the defendant was transported to the sheriff's station, he was searched again and a small bindle of heroin was found in his pocket. The defendant was shocked and surprised at the discovery. (*Id.* at pp. 1069-1070.) The defendant's son testified that the heroin found on the television set belonged to him. (*Ibid.*)

The defendant was charged with possession of heroin. The jury was not instructed on the law of unanimity. (*People v. Castaneda*, *supra*, 55 Cal.App.4th at p. 1070.) The appellate court concluded the jury could have found the defendant constructively possessed the heroin on the television set, or it could have found the defendant possessed the heroin discovered in his pocket at the sheriff's station. (*Id.* at p. 1071.) The appellate court held the two acts of possession were factually distinct and the defendant offered separate defenses to the two acts: (1) the heroin on the television belonged to the defendant's son, and (2) the heroin in the defendant's pocket was planted. (*Ibid.*) Thus, the appellate court concluded the trial court erred by not instructing the jury on the law of unanimity. (*Ibid.*)

The instant case is distinguishable from *Castaneda* because defendant, in the instant case, was alone with the pipes. One pipe was in his pants pocket and the other was in his backpack—there was nothing indicating the pipes belonged to another person and nothing making the offenses factually distinct. Further, defendant did not offer separate defenses. Defendant conceded the drug related charges. Given the differences between the two cases, we are not persuaded by defendant's reliance on *Castaneda*.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.