Filed 7/26/16  P. v. Sedgeman CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>CHARLES PHILLIP SEDGEMAN,<br><br>    Defendant and Appellant. | C072359<br><br>(Super. Ct. No. CRF12238) |

Defendant Charles Phillip Sedgeman appeals following conviction of one count of felony possession of a controlled substance (methamphetamine) and one count of misdemeanor possession of controlled-substance paraphernalia.  (Health & Saf. Code, §§ 11377, subd. (a), 11364, subd. (a); unless otherwise stated, statutory references that follow are to the Health and Safety Code.)  Defendant contends the trial court improperly denied his request to redact portions of his audiotaped police interrogation in which (a) he invoked his constitutional rights to counsel and to remain silent and (b) the police officer

1

stated the police had "probable cause" to believe defendant was *selling* (as opposed to merely possessing) methamphetamine. Defendant also contends the trial court erred by not instructing the jury on the need to decide unanimously which of two quantities of methamphetamine defendant possessed in order to convict him on the single count. We conclude any errors were harmless, and we affirm the judgment.

FACTS AND PROCEEDINGS

Around noon on January 19, 2012, law enforcement officers from a county-wide narcotics task force executed a search warrant on a two-bedroom trailer in West Sacramento, looking for drugs. Seven officers went to the front door, where they saw a video camera that might alert the occupants to the presence of law enforcement officers. An officer knocked on the door and announced they were police and had a search warrant. After about 20 seconds with no one answering the door, the officers used a ram tool to knock the door open and entered. A pit bull mix dog ran into the living room growling and lunged at Agent Alisha Slater, who shot and killed the dog.

A woman named Sensier (phonetic) was in the first bedroom on the left. Police found defendant walking in the hallway directly in front of the back master bedroom, which defendant shared with his girlfriend Cheri, who was not present. Police detained defendant and Sensier at the home. Although defendant notes evidence that he was handcuffed, that evidence was adduced only in a hearing outside the jury's presence.

In a nightstand drawer in defendant's bedroom, police found a small glass pipe, a medicine bottle containing 0.12 gram (as measured by the criminalist) of methamphetamine, and a digital scale commonly used for drug sales. Agent Slater defined a "usable amount" of the drug as "if you can see it, then you can use it," and 0.1 gram is a "usable amount." In a trash can under a desk in defendant's bedroom, police found a glass pipe containing black residue and a torn piece of plastic containing a substance that tested positive for methamphetamine.

2

Although Agent Slater testified the substance from the trash can weighed 0.1 gram, the criminalist testified it was 0.01 gram, which was not mere residue because residue is anything less than 0.01 gram. In defendant's bedroom police found a wallet with his identification card. Police also found a rifle magazine and rifle round in the home, but no rifle. The trial court sustained a relevance objection to the magazine/round but admitted them into evidence, noting they did not mean much without a rifle. No one argued the magazine/round to the jury.

Around 2:27 p.m., Agent Slater audiotaped an interview with defendant in the home. The audiotape was played for the jury. The interrogation begins with the agent reading defendant his rights under *Miranda v. Arizona* (1966) 384 U.S. 436. She asks if defendant understands, and he says, "Understood." She says something transcribed as "inaudible," to which defendant responded, "Yes." At the Evidence Code section 402 hearing, the agent was unable to decipher or recall what she said.

The agent then asked where defendant was when the police arrived to execute the search warrant. He said he was walking up the hallway from his bedroom. She asked if he "dump[ed] dope." He said, "No, I have some weed, that's all." She said she found "a little bit of crystal, but I mean do you like--," at which point he interrupted and said, "No." She said she found a bag by his desk, and "[o]bviously, we're the narcotics team we have a search warrant so we know what you've been up to. We're not saying you're the biggest guy in the world. We know who we're after, but we know what you've been up to so there's obviously no need in the world to lie right now." Defendant said he was not lying. She asked what was the packaging material by his feet. He said "It was just [- - -] I had a little bit and," at which point she interjected, "Ripped it open?" He said, "Ripped it open, and that was it." She asked where he put it. He said, "There was nothing in it. Whatever [- - -] it was just a [- - -] I don't know how to explain it. Um, personal, personal use. That's it." She asked where it was and if it was all gone. He said if the police thought there was something there, they should bring in a police dog instead

3

of "tearing my house apart." She said he should just be honest and tell her where everything is. He said, "I am [- - -] I've been honest with you. I have nothing here just that little bit of personal use that was it. And there's weed in the drawer. You know there's several different kinds of weed it's just for personal use though." She said, "This is all we do is work dope. And the majority of people that we serve warrants on are selling crystal. That's why--or any other type of drugs. That's why we're here. So we're here because *we have probable cause to believe that you have been selling methamphetamine*. [Italics added.] I'll tell you this. The classic line that every single drug dealer uses is 'it's just for personal,' so just you saying that almost just gives yourself up right there. It's just ridiculous. I mean honestly we should just like cut the crap. I know you've been selling crystal. I know who your connect is. Alright? You saw us walk across the street. We have [inaudible] [orig. brackets] already. There's no reason in the world for you to lie--." Defendant said he was not lying. The agent asked, "so you have no more methamphetamine?" He said, "No I don't." She asked, "where is it? When was the last time you had meth?" He said, "I dunno, just," to which she interrupted and asked, "This morning?" He said, "This morning, yeah." She asked "Where is that meth?" He said, "I've already done it. Okay? There is nothing, there is nothing here I don't have anything." She said she thinks he dumped it. He said, "There's nothing to dump." She asked "How long have you been selling methamphetamine," to which he replied, "I haven't." She asked, "You're really gonna play that game?" He responded, "*I have a right to an attorney[.] I have a right to remain silent*." (Italics added.) Thus ended the interrogation presented to the jury.

Defendant did not testify at trial.

The jury found defendant guilty on both counts, felony possession of a controlled substance and misdemeanor possession of drug paraphernalia. The trial court placed defendant on probation for three years and said defendant could request reduction of the felony to a misdemeanor upon successful completion of a drug treatment program.

4

I

*Invocation of Right to Counsel and Right to Remain Silent*

Defendant contends the trial court erred in denying his motion to redact from the audiotaped police interrogation his words, "I have a right to an attorney[.]  I have a right to remain silent."  Defendant contends this was error under *Doyle v. Ohio* (1976) 426 U.S. 610, 619 [49 L.Ed.2d 91] (*Doyle*) and Evidence Code section 352.  The People dispute whether either ground was adequately stated in the trial court and contend defendant forfeited the objection by failing to raise it again when the audiotape was played for the jury.  We observe defense counsel cut off the trial court's explanation of its ruling, stating she just wanted to make her record.  We need not address the People's procedural arguments or defendant's reply to them, because even assuming for the sake of argument evidentiary error under *Doyle* or Evidence Code section 352, there was no prejudicial error warranting reversal of the judgment.

A.      *Doyle* Error

Under *Doyle*, the use against defendant of a post-arrest invocation of rights following a *Miranda* admonition violates due process.  (*Doyle, supra*, 426 U.S. 610; *People v. Thomas* (2012) 54 Cal.4th 908, 936 (*Thomas*).)  Here, Agent Slater testified at the hearing that defendant was detained and in handcuffs when she conducted the audiotaped interrogation that began with a *Miranda* admonition.  The objectionable use generally involves impeachment.  (*Doyle, supra*, 426 U.S. 610.)  Here, defendant did not testify, but we will assume a *Doyle* violation could be found if the invocation were used to counter defendant's denials in the audiotaped interview.

A *Doyle* violation " 'does not occur unless the prosecutor is *permitted* to use a defendant's postarrest silence against him at trial . . . .' [Citation.]" (*Thomas, supra*, 54 Cal.4th at p. 936.)  *Thomas* held there was no *Doyle* violation, where a detective

testified the defendant asked for an attorney during a police interrogation, but "the prosecutor did not attempt and was not permitted to use the comment against defendant by inviting the jury to draw any adverse inferences from the remark." (*Ibid*.)

Here too, the prosecutor did not invite the jury to draw any adverse inference from defendant's invocation of his rights. The prosecutor never even mentioned the invocation of rights in closing argument to the jury. The prosecutor referred to the audiotape only to point out that defendant's admission he consumed methamphetamine that morning was relevant to prove he knew what methamphetamine is and possessed the pipe with black residue for that purpose.

Moreover, *Thomas, supra*, 54 Cal.4th 908, said that, even if the testimony could be considered a *Doyle* violation, it was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705], because the defendant's initial denial of involvement in a robbery was impeached, not by his invocation of right to counsel, but by his later admission to police that he had participated in the crimes, and evidence of guilt was overwhelming and uncontested at trial. (*Thomas, supra*, 54 Cal.4th at pp. 936-937, citing *People v. Riggs* (2008) 44 Cal.4th 248, 299 [no prejudicial *Doyle* error where testimony did not impeach defendant's later statements to police by reference to his earlier decision not to talk with them, which is the harm *Doyle* seeks to prevent]; *People v. Hinton* (2002) 37 Cal.4th 839, 868 [defendant's invocation of *Miranda* rights was cumulative of, and inferior to, other evidence indicating he had fabricated the account he eventually provided during police interviews and reiterated at trial]; *People v. Hughes* (2002) 27 Cal.4th 287, 332 [any *Doyle* error was harmless beyond a reasonable doubt in light of overwhelming evidence of defendant's guilt].)

Defendant argues the trial court, by denying redaction of his invocation of rights, facilitated the prosecutor's improper presentation of evidence to the jurors that defendant exercised his right to remain silent in the face of accusations of his involvement in drug sales activities.

6

However, defendant was not charged with or convicted of *selling* drugs. The audiotape was not used to impeach defendant, who did not testify at trial. Contrary to defendant's claim, his invocation of rights would not lead jurors to draw negative inferences that he sold drugs and therefore was guilty of the charged possession offenses. Rather, his admission that he consumed methamphetamine that morning was strong evidence of his control over the remaining methamphetamine found in his room. Defense counsel asked the jury to believe defendant's audiotaped denials of knowledge about methamphetamine and to disregard his admission that he consumed methamphetamine that morning because he was not being charged with the drugs he consumed, but only with the drugs found in the room he shared with another person. However, defendant's admission that he consumed methamphetamine that morning was relevant to show defendant knows what methamphetamine is and knows how to use it -- relevant evidence to the charges of possession of drugs and drug paraphernalia, as the prosecutor argued to the jury.

Defendant cites a federal case which found reversible error where the district court allowed a police officer to testify about the defendant's post-arrest, pre-*Miranda* silence when confronted with a large amount of marijuana found in his vehicle's gas tank, and the prosecution urged the jury to use the defendant's non-reaction as evidence of his guilt, and the other evidence against him was not strong. (*United States v. Velarde-Gomez* (9th Cir. 2001) 269 F.3d 1023.) The defendant there testified the officer spoke little Spanish and the defendant had trouble understanding. (*Id*. at pp. 1027, 1036.) The defendant also testified he spent the night with a prostitute in his hotel room and left his car keys and wallet accessible to her while he took a shower for 15 to 20 minutes. (*Id*. at pp. 1028, 1036.) The federal case bears no similarity at all to the case before us.

Assuming *Doyle* error, it was harmless beyond a reasonable doubt.

B.      Evidence Code Section 352

Evidence Code section 352 provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Even assuming for the sake of argument that this ground is preserved for appeal and that the invocation of rights should have been excluded as more prejudicial than probative under Evidence Code section 352, any error was harmless because, for the same reasons already discussed, it is not reasonably probable that defendant would have obtained a more favorable result absent the error.  (*People v. Gonzales* (2011) 51 Cal.4th 894, 924 (*Gonzales*); *People v. Watson* (1956) 46 Cal.2d 818, 836.)

II

*Drug Sales*

Defendant argues the trial court abused its discretion in denying his motion to redact from the audiotape Agent Slater's comment, "So we're here because we have probable cause to believe that you have been selling methamphetamine."  Defendant also complains the trial court overruled his objections to the agent testifying (1) that the digital scale drew her attention because it is common to find such scales where methamphetamine is being sold, and (2) "the reason why we had a search warrant for that residence was probable cause to believe that the subjects living there could be involved in illegal sale of methamphetamine."  And defendant complains the trial court overruled his objection to a rifle round found in the home.  Defendant argues all this evidence was irrelevant and more prejudicial than probative and, if he forfeited an Evidence Code section 352 objection, it is his trial counsel's fault for rendering ineffective assistance of counsel.

Again, even if we assume all contentions are preserved for appeal and further assume the evidence should have been excluded, any error was harmless because it is not reasonably likely defendant would have obtained a better result absent the error. (*Gonzales, supra*, 51 Cal.4th at p. 924.) He was not charged with or convicted of selling drugs. Agent Slater testified at trial that the probable cause was to believe someone in the home could be involved in sales, not necessarily that it was defendant as opposed to another person with whom he shared the space. The methamphetamine found in his room plus his admission about consuming methamphetamine that morning, thus proving his knowledge, were uncontroverted evidence of the possession offense.

Defendant argues the challenged evidence likely engendered a negative emotional bias against him since it portrayed him as someone involved in more egregious conduct than that with which he was charged. Defendant argues the challenged evidence would have given the jury the impression that the prosecution had evidence of defendant's involvement in drug sales that was not being presented to the jury. To the contrary, the fact that such evidence was *not* being presented (and that defendant was not being charged with selling drugs) would give the impression that no such evidence of drug sales by defendant existed. Additionally, evidence of defendant's guilt on the charged possession offenses was clear.

Defendant fails to show any prejudicial evidentiary error, individual or cumulative, warranting reversal.

III

*Unanimity Instruction*

Defendant next claims instructional error in the trial court's failure to instruct the jury sua sponte on the need for a unanimous agreement as to which unit of methamphetamine he possessed -- the methamphetamine found in the nightstand or the methamphetamine found in the trash can. As defendant notes, the trial court did give the

9

unanimity instruction, but only for the two pipes: "The People allege that the defendant possessed the following items: 2 pipes. You may not find the defendant guilty unless you all agree that the People have proved that the defendant possessed at least one of these items and you all agree on which item he possessed."

The unanimity requirement is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all jurors agree he committed. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132; *People v. Riel* (2000) 22 Cal.4th 1153, 1199.) In a prosecution for narcotics possession, a unanimity instruction is required where actual or constructive possession is based upon two or more individual units of contraband reasonably distinguishable by a separation in time and/or space and there is evidence as to each unit from which a reasonable jury could find that it was solely possessed by a person or persons other than the defendant. (*People v. King* (1991) 231 Cal.App.3d 493, 501 (*King*).) Among the factors to be considered in determining whether the instruction is needed are whether the defendant raised separate defenses to separate narcotic items and whether there is conflicting evidence over ownership of the items. (*People v. Castaneda* (1997) 55 Cal.App.4th 1067, 1070-1071 (*Castaneda*).)

Even assuming for the sake of argument that the trial court should have given the unanimity instruction, its omission was harmless, even under the *Chapman* standard of beyond a reasonable doubt. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 576-579 [noting split of authority as to whether *Chapman* or *Watson* standard applies to erroneous omission of unanimity instruction].)

Under *Chapman*, where the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that the defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless. (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853 (*Thompson*) [error harmless where defendant presented unitary

10

defense that all six guns belonged to his mother].)  Where the defendant offered the same defense to all criminal acts and the jury's verdict implies that it did not believe the only defense offered, failure to give a unanimity instruction is harmless error.  (*People v. Diedrich* (1982) 31 Cal.3d 263, 283.)  The error is also harmless where the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence.  (*Thompson, supra*, 36 Cal.App.4th at p. 853.)

Here, the prosecutor placed both quantities of methamphetamine in the same People's Exhibit Seven and argued defendant possessed both.  Defendant did not raise separate defenses.  Defendant's trial counsel argued to the jury, "What he's charged with is in People's 7.  Did he possess it?  Did he have knowledge of it?"  She argued it was not clear whether that bedroom was his, and he shared a bedroom with his girlfriend, and there were other people in the home, and defendant admitted only marijuana possession which was not being charged, and he was not being charged with drugs he consumed that morning, and he denied any knowledge of "what's in People's 7," and the jurors were required to adopt defendant's denial as a reasonable interpretation pointing toward not-guilty.

On appeal, defendant argues that, because he admitted having consumed methamphetamine that morning, some jurors may have believed he possessed the drug found in the trash can (because it was discarded remains of what he consumed that morning) but that he did not possess the drug in the medicine bottle because there was no direct evidence the medicine bottle was his.  Defendant further reasons that some jurors may have found he possessed the drug in the medicine bottle but may have found the 0.01 amount in the trash can did not meet the essential element of being a "usable amount."  Defendant observes the jury during deliberations asked the court to clarify the meaning of "usable amount."  The court re-read the instruction and, over defense

11

objection, added that a trace is simply when it cannot be used, such as when it is a blackened residue.

Defendant's theory falters with the medicine bottle.  He offered no defense about the medicine bottle, and the jury instructions and the prosecutor's closing arguments made clear that it did not matter whether someone else also possessed the methamphetamine.  The jury instruction stated, "Two or more people may possess something at the same time.  [¶]  A person does not have to actually hold or touch something, to possess it.  It is enough if the person has control over it or the right to control it, either personally or through another person."  The prosecutor argued to the jury, "obviously methamphetamine that's in a nightstand drawer in his bedroom or in a trash can in his bedroom is easily accessible to him, and he would be able to control it from that location."

Defendant ineffectually relies on inapposite cases where different defenses were presented as to different items.  (*Castaneda, supra*, 55 Cal.App.4th at p. 1071 [defendant's son testified heroin found on television set was his, and defendant claimed police planted heroin found in his pocket at police station]; *King, supra*, 231 Cal.App.3d at pp. 496-499 [drugs found in defendant's living room were inside a purse owned by another woman, and defendant's boyfriend testified that drugs found in ceramic statute in kitchen belonged to him]; *People v. Crawford* (1982) 131 Cal.App.3d 591 [defendant and his girlfriend denied ever seeing gun found holstered to his bed, and girlfriend testified the gun found in the closet was hers and she never saw defendant possess it].)

We conclude omission of a unanimity instruction, if error, was harmless beyond a reasonable doubt.

DISPOSITION

The judgment is affirmed.

                                                                _____HULL_____, Acting P. J.

We concur:

_____MURRAY_____, J.

_____HOCH_____, J.

13