Filed 6/26/14  P. v. Bihl CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEENA LEE BIHL,<br><br>    Defendant and Appellant. | D064065<br><br><br>(Super. Ct. No. SCD245941) |

APPEAL from an order of the Superior Court of San Diego County, Howard H. Shore, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lynne G. McGinnis and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

Deena Lee Bihl appeals the order suspending imposition of sentence and placing her on probation for three years after a jury found her guilty of possession of methamphetamine for sale and of transportation of methamphetamine (Health & Saf. Code, §§ 11378, 11379, subd. (a)) and also found the transportation was not for personal use (Pen. Code, § 1210, subd. (a)). Bihl contends the trial court prejudicially erred by not giving a unanimity instruction and by limiting her cross-examination of a prosecution witness, and she also argues the cumulative effect of these errors requires reversal. We affirm.

## I.

## BACKGROUND

San Diego police officer Michael Sherbondy stopped a car driven by Bihl for a broken taillight. There were also two men in the car, one seated in the front passenger seat and the other in the seat behind him.

Sherbondy searched Bihl's purse and found marijuana and two small diamonds within a small container. He also found "at least 20 gift cards," three cell phones, and $666 in various denominations of bills inside Bihl's purse. Sherbondy took a pocket knife from Bihl's waistband, and she handed him $1,100 in various denominations of bills from her pockets and a small plastic bag of methamphetamine from her brassière.

San Diego police officer Gene Loucks searched the trunk of Bihl's car. In the trunk, he found a clutch purse that contained a small electronic scale, several small plastic bags, and "a purple woman's style coin purse." Inside the coin purse, Loucks found a small plastic bag of methamphetamine.

2

Detective Richard Aguilar of the San Diego Police Department testified at trial as an expert witness on drug sales. Based on his training, experience, review of the police reports, and consideration of the evidence found on Bihl's person, in her purse, and in the trunk of her car, Aguilar testified Bihl possessed methamphetamine for purposes of sale.

II.

DISCUSSION

Bihl challenges her convictions on three grounds: instructional error, erroneous limitation of cross-examination, and cumulative effect of these errors. As we explain below, none of these grounds has merit.

A.    *The Trial Court Had No Duty to Give a Unanimity Instruction*

Bihl complains the trial court failed to discharge its sua sponte duty to give the jury a specific unanimity instruction. (See CALCRIM No. 3500.)[1] Such an instruction was required, she claims, because each conviction could have been based on a separate act of possession or transportation, namely possession or transportation of the methamphetamine in her brassière or, alternatively, possession or transportation of the methamphetamine in the clutch purse in the trunk of her car. We disagree.

---

[1]    CALCRIM No. 3500 states in part: "The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

The constitutional requirement of a unanimous verdict in a criminal case means "the jury must agree unanimously the defendant is guilty of a *specific* crime." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) A trial court ordinarily instructs the jury adequately on unanimity by advising the jury, as the court did here, that on each count all jurors must agree to the verdict. (See CALCRIM No. 3550.) A more specific instruction that the jury must unanimously agree on the particular act underlying a count (CALCRIM No. 3500) is required only when the number of similar, separately chargeable criminal acts shown by the evidence exceeds the number of crimes actually charged in the accusatory pleading. (*People v. Maury* (2003) 30 Cal.4th 342, 422-423; *Russo*, at p. 1132; *People v. Sutherland* (1993) 17 Cal.App.4th 602, 611-612.) "The instruction is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed." (*Sutherland*, at p. 612.) There is no such danger, and no specific unanimity instruction need be given, when the defendant's acts are so closely connected that they form part of a single transaction and the jury is not reasonably likely to distinguish between them. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 100; *People v. Burns* (1987) 196 Cal.App.3d 1440, 1458.)

Here, the acts underlying Bihl's convictions were part of one transaction, and the jury was not likely to disagree over which acts she committed. Bihl was convicted of possession for sale and transportation of methamphetamine based on the bags of methamphetamine, the cash, the drug paraphernalia, and other items police officers found

after they stopped her car and conducted a search.[2]  Although some of the

methamphetamine was found on Bihl's person and some in the trunk of the car she was

driving, "[t]he act[s] of possession [and transportation] here [were] not fragmented as to

time or space.  The evidence showed all of the [methamphetamine] came from the car,"

and was located in areas under Bihl's exclusive or joint control.  (*People v. Wright* (1968)

268 Cal.App.2d 196, 198 [three marijuana cigarettes found in car, two found on cliff

where passenger threw them].)  The issue at trial was "not whether [Bihl] possessed [and

transported] each narcotic item found in the [car], but whether [she] possessed [and

transported] a usable amount of [methamphetamine] at the time and place charged."

(*Ibid.*)  It therefore "was not necessary to instruct the jury its members must all agree

which specific items of narcotics [Bihl] possessed [or transported] so long as they all

agreed at the time and place [she] possessed, separately, jointly or constructively, [and

transported] a usable amount of [methamphetamine]."  (*Ibid.*)

In support of her contrary argument that the trial court had a sua sponte duty to

give a specific unanimity instruction, Bihl relies heavily on *People v. Castaneda* (1997)

55 Cal.App.4th 1067 (*Castaneda*) and *People v. King* (1991) 231 Cal.App.3d 493 (*King*).

*Castaneda* held a unanimity instruction is required when the evidence shows multiple

"acts of possession [that are] factually distinct" and the defendant "offer[s] separate

---

[2]     To prove possession for sale, the People had to show Bihl possessed a usable
quantity of a methamphetamine, knew she possessed it, knew it was a controlled
substance, and intended to sell it.  (*People v. Montero* (2007) 155 Cal.App.4th 1170,
1174-1177.)  "Transportation of a controlled substance is established by carrying or
conveying a usable quantity of a controlled substance with knowledge of its presence and
illegal character."  (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1746.)

defenses to each act," but the People do not elect to rely on a particular act. (*Castaneda*, at p. 1071.) *King* similarly held a unanimity instruction is required when "actual or constructive possession is based upon two or more individual units of contraband reasonably distinguishable by a separation in time and/or space and there is evidence as to each unit from which a reasonable jury could find that it was solely possessed by a person or persons other than the defendant, absent an election by the People." (*King*, at p. 501.) Neither case supports reversal here, because no evidence indicated anyone other than Bihl possessed either bag of methamphetamine.

In *King*, the defendant was convicted of possession for sale after methamphetamine was found in two locations inside a house she rented, one quantity in a purse in the living room and another inside a statue in the kitchen. (*King*, *supra*, 231 Cal.App.3d at pp. 495, 497.) There was evidence the purse belonged to someone else, the house had multiple occupants, and the drugs found in the statue belonged to the defendant's boyfriend. (*Id.* at pp. 497-498.) *King* held a unanimity instruction was required because "there was a separation of the contraband by space *and there was conflicting evidence as to the ownership of the narcotics themselves*." (*Id.* at p. 501, italics added.)

In *Castaneda*, the defendant was convicted of possession of heroin. (*Castaneda*, *supra*, 55 Cal.App.4th at p. 1069.) Law enforcement officers found heroin taped to the back of a television in the room in which the defendant was arrested, and later found heroin in the defendant's pocket when he was searched at the sheriff's station. (*Id.* at pp. 1069-1070.) The defendant's son testified the heroin found on the television belonged

6

to him (*id.* at p. 1070), and the defendant argued the heroin found in his pocket during the search at the sheriff's station had been planted because the evidence showed no drugs were found in his pocket when he was searched upon arrest (*id.* at pp. 1069, 1071). The *Castaneda* court concluded a unanimity instruction was required because "[*t*]*he evidence disclosed two different ways in which* [*the defendant*] *could have violated the single charge of possession of a controlled substance*." (*Id.* at p. 1070, italics added.)

Bihl's case is distinguishable from *King* and *Castaneda*. The two units of contraband involved in this case were not "reasonably distinguishable by a separation in time and/or space" (*King*, *supra*, 231 Cal.App.3d at p. 501), and the acts of possession underlying Bihl's convictions were not "factually distinct" (*Castaneda*, *supra*, 55 Cal.App.4th at p. 1071). Both bags of methamphetamine were found during the same search, at the same time, and near each other in places under Bihl's control, namely, in her brassière as she sat in the driver's seat of her car and in a purse in the trunk of the car. There was no evidence anyone other than Bihl possessed or transported either bag of methamphetamine.[3] Although Bihl insists she "offered separate defenses to each act [of possession,]" all she really offered was argument based on speculation. Bihl called no witnesses and presented no evidence on her own behalf as to either charge. In closing arguments, Bihl's counsel contended "this case was about a failure to investigate and a

---

[3]     Bihl essentially concedes this evidentiary deficiency by acknowledging that besides "the presence of the passengers in the car," she "had no other evidence to bolster this argument" that the purse containing the methamphetamine "had been placed in the trunk by one of the car's passengers." Bihl complains, however, that the trial court's limitation on her cross-examination of Loucks prevented her from presenting such other evidence. We address (and reject) this complaint in part III.B., *post*.

7

lack of evidence and a rush to judgment." Specifically, counsel argued "the officers' failure to investigate" made it "clear from the evidence that [the People] have not proved beyond a reasonable doubt that [Bihl] had knowledge that [the methamphetamine] was even in the trunk." Counsel also argued there was reasonable doubt Bihl actually had methamphetamine in her brassière because the "quality" of Sherbondy's testimony was suspect based on his alleged mishandling of some of the evidence found in the search. Counsel then discussed the elements of each charged offense and the related evidence, and argued the People had not met their burden to prove Bihl guilty of either charge beyond a reasonable doubt. On this record, where there was no evidence anyone other than Bihl possessed or transported either bag of methamphetamine and the only "defense" offered as to both bags was reasonable doubt, neither *King* nor *Castaneda* required the trial court to give a unanimity instruction.

Also distinguishable is *People v. Wesley* (1986) 177 Cal.App.3d 397, a case Bihl cited for the first time in her reply brief. In *Wesley*, the People charged the defendant in one count with "possess[ion] for sale of a controlled substance, 'to wit, cocaine *and* heroin,' " but the jury returned a verdict finding the defendant guilty of possession for sale of " 'cocaine *or* heroin.' " (*Id.* at p. 400.) The heroin was found on the defendant's person, but the cocaine was found on a table in the living room of his home where five other people were present, two of whom dropped packages of cocaine on the floor. (*Id.* at pp. 399-400.) Because the "evidence disclosed two different ways in which [the defendant] could have violated the single charge . . . of possession for sale of a controlled substance" and "the verdict fail[ed] to resolve the ambiguity presented by the evidence,"

8

the appellate court held it was reversible error not to give a unanimity instruction. (*Id.* at p. 401.) Here, by contrast, only one controlled substance (methamphetamine) was at issue; there was no evidence, as opposed to mere argument, that anyone other than Bihl had control over it; and the verdicts were not ambiguous as to what controlled substance she possessed and transported. *Wesley* therefore does not support Bihl's argument that the trial court reversibly erred by not giving the jury a unanimity instruction.

Even if we were to assume a unanimity instruction should have been given, we would conclude the trial court's failure to give the instruction was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Gary* (1987) 189 Cal.App.3d 1212, 1218.) "Where the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless." (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853.) "For example, where the defendant offered the same defense to all criminal acts, and 'the jury's verdict implies that it did not believe the only defense offered,' failure to give a unanimity instruction is harmless error." (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 577; see *People v. Wolfe* (2003) 114 Cal.App.4th 177, 188 [failure to give unanimity instruction was harmless when jury rejected "unitary defense" to all instances of firearm possession].) The failure to give a unanimity instruction is also harmless "if the record indicate[s] the jury resolved the basic credibility dispute against the defendant and would have convicted the defendant of *any*

9

of the various offenses shown by the evidence to have been committed."  (*People v. Jones* (1990) 51 Cal.3d 294, 307.)

Under these rules, any error in not giving the jury a unanimity instruction in this case was harmless.  The case against Bihl rested primarily on the police officers' testimony about what they found in the search of Bihl and her car.  The discovery of usable quantities of methamphetamine, a large amount of currency in various denominations, numerous small plastic bags, and a small electronic scale strongly suggested Bihl transported methamphetamine and possessed it for sale.  Bihl neither testified nor presented any other evidence to dispute the People's evidence.  Her only "defense" to the charges against her consisted of an attempt, through cross-examination and closing argument, to undermine the credibility of the police officers and their investigation and thereby to convince the jury the People had not met their burden of proof.  The guilty verdicts indicate the jury rejected this "defense," i.e., the jury decided the credibility issue against Bihl and accepted the officers' testimony.  "Given this record, it is reasonable to conclude that the jury believed beyond a reasonable doubt that [Bihl] committed all acts if [she] committed any.  Thus, the failure to give the unanimity instruction was harmless beyond a reasonable doubt."  (*People v. Curry* (2007) 158 Cal.App.4th 766, 784; see *People v. Napoles* (2002) 104 Cal.App.4th 108, 120 [failure to give unanimity instruction was harmless when credibility was main issue in case].)

B.      *The Trial Court Did Not Unconstitutionally Limit Cross-examination*

Bihl complains the trial court violated her Sixth Amendment right to confront adverse witnesses and her Fourteenth Amendment due process right to present a defense

by limiting her cross-examination of Loucks about his prior drug-related contacts with one of the passengers in Bihl's car. After providing further background, we shall explain why this complaint lacks merit.

1. *Additional Background*

The People called Loucks as a witness in their case-in-chief. In response to questioning by the prosecutor, Loucks testified he searched the trunk of Bihl's car, identified the methamphetamine and other items he found there, and described the chain of custody for the items that were seized as evidence.

Bihl's trial counsel then cross-examined Loucks about the items he found in Bihl's trunk. Counsel also inquired into Loucks's familiarity with the passengers in Bihl's car. Loucks testified one of the passengers was Carlo Manuel. Counsel then asked, "And is it fair to say you've had previous drug contacts with Mr. Manuel?" When the prosecutor objected on relevance grounds, the trial court sustained the objection and stated, "It's outside the scope of direct."

On redirect examination, the prosecutor asked Loucks whom he recognized in Bihl's car. Loucks responded, "All three of them." The prosecutor then asked whether Loucks had seen Bihl driving the car on prior occasions, and he responded in the affirmative.

On recross-examination, Bihl's counsel again asked Loucks whether one of the individuals he recognized in Bihl's car was Manuel, and Loucks against answered, "Yes." The following exchange then occurred:

11

"[Bihl's counsel:]  And you recognized him from prior contacts involving —

"[The prosecutor:]  Objection.  Relevance.

"The Court:  I indicated in limine he can indicate if he recognized the people from prior contacts.  That's as far as it will go.

"[Bihl's counsel:]  Nothing further."

The court apparently was referring to its earlier in limine rulings that: (1) the police officers could be asked whether they had previous contacts with Bihl; (2) Bihl's counsel could inquire as to the circumstances of those contacts; but (3) the prosecutor could not ask Sherbondy whether he knew Bihl used methamphetamine.

2.      *Legal Analysis*

As an initial matter, we note Bihl has not preserved her federal constitutional arguments for appellate review.  A defendant who fails to assert in the trial court claims of federal constitutional error forfeits those claims on appeal.  (*People v. Riccardi* (2012) 54 Cal.4th 758, 801 [confrontation clause claim]; *People v. Thornton* (2007) 41 Cal.4th 391, 427 [same]; *People v. Cua* (2011) 191 Cal.App.4th 582, 591 [due process claim].)  When the trial court prevented Bihl's counsel from obtaining testimony from Loucks about his prior drug-related contacts with Manuel, counsel never mentioned either the confrontation clause or the due process clause.  Bihl may not do so for the first time on appeal.  Nevertheless, we exercise our discretion to address Bihl's constitutional arguments on the merits to forestall her claim that trial counsel provided constitutionally ineffective assistance by not raising them at trial.  (See, e.g., *People v. Neely* (2009) 176 Cal.App.4th 787, 795; *People v. Scaffidi* (1992) 11 Cal.App.4th 145, 151.)

12

The confrontation clause of the Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." (U.S. Const., 6th Amend.; see *Pointer v. Texas* (1965) 380 U.S. 400, 403 [confrontation clause applies to states through 14th Amend.].) The confrontation clause guarantees a criminal defendant an adequate opportunity to cross-examine adverse witnesses in order to expose flaws in their perception, memory, or veracity and thereby call the factfinder's attention to reasons to doubt the witnesses' testimony. (*United States v. Owens* (1988) 484 U.S. 554, 557-558; *Davis v. Alaska* (1974) 415 U.S. 308, 316.) The right to cross-examine adverse witnesses is also a component of a criminal defendant's constitutional right to " 'a meaningful opportunity to present a complete defense.' " (*Crane v. Kentucky* (1986) 476 U.S. 683, 690.) Although cross-examination is thus "a fundamental right essential to a fair trial in a criminal prosecution" (*Pointer v. Texas*, *supra*, at p. 404), "not every restriction on a defendant's desired method of cross-examination is a constitutional violation" (*People v. Hamilton* (2009) 45 Cal.4th 863, 943). In particular, application of the rules of evidence to cross-examination ordinarily does not violate a defendant's right to confront adverse witnesses or to present a defense. (*People v. Quartermain* (1997) 16 Cal.4th 600, 623; *People v. Hall* (1986) 41 Cal.3d 826, 834; *People v. Ardoin* (2011) 196 Cal.App.4th 102, 119.)

Here, testimony from Loucks about his previous drug-related contacts with Manuel was properly excluded under the rules of evidence. Cross-examination is limited

to matters "within the scope of the direct examination" (Evid. Code, § 773, subd. (a)),[4] and may elicit any information that is relevant to a complete and accurate understanding of the witness's testimony on direct examination (*People v. Dotson* (1956) 46 Cal.2d 891, 898; *Eddy v. Gallaway* (1970) 11 Cal.App.3d 185, 192; *People v. Whitehead* (1952) 113 Cal.App.2d 43, 48-49). Bihl's questions about the nature of Loucks's previous encounters with Manuel would not have given the jury a better understanding of Loucks's testimony because Loucks never mentioned Manuel during direct or redirect examination. The only testimony during those examinations that even remotely related to Manuel was Loucks's statement during redirect examination that he recognized all three occupants of Bihl's car. The prosecutor, however, asked no follow-up questions about Manuel. Bihl's inquiry into the nature of Loucks's prior contacts with Manuel therefore exceeded the permissible scope of cross-examination, as the trial court ruled. Although the same ruling would have been correct as to Bihl's inquiry into that matter during recross-examination, the court excluded the testimony on the basis of an earlier, inapplicable in limine ruling. The

---

4    There is an exception to this limitation on the scope of cross-examination for questioning designed to attack a witness's credibility, such as by showing the witness's bias. (*People v. Cooper* (1991) 53 Cal.3d 771, 816-817; *Kelley v. Bailey* (1961) 189 Cal.App.2d 728, 736.) Apparently relying on this exception, Bihl asserts "cross-examination of Loucks would have been important to show that [his] previous encounters with Manuel might have biased him against Manuel or anyone found traveling with Manuel, like [Bihl]." We reject this assertion, which is unaccompanied by any citation to the record or legal authority. Although a prior drug-related contact might have biased Loucks against Manuel (cf. *People v. Wheeler* (1978) 22 Cal.3d 258, 275 [prior arrest may bias arrestee against law enforcement]), any such bias would not necessarily extend to anyone found with Manuel, including Bihl. Since "[i]t is bias towards a party that counts and may be inquired into . . . " (*People v. Vanderburg* (1960) 184 Cal.App.2d 33, 41), questioning to show Loucks's bias against Manuel was not permissible under the credibility exception to the limitation on the scope of cross-examination.

court's reliance on that ground does not require reversal, however, because a ruling excluding evidence will be upheld if the evidence is subject to exclusion on any ground, even though the trial court relied on the wrong ground. (*Ceja v. Department of Transportation* (2011) 201 Cal.App.4th 1475, 1483.)

Loucks's testimony about his prior drug-related contacts with Manuel also properly could have been excluded as inadmissible propensity evidence, as the People contend in their appellate brief. Evidence of specific instances of a person's conduct "is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) The purpose of this rule is to prevent a trier of fact from inferring a person committed the bad act at issue based on the person's commission of prior bad acts. (*People v. Earle* (2009) 172 Cal.App.4th 372, 397; *People v. Von Villas* (1992) 10 Cal.App.4th 201, 262.) It was precisely this forbidden inference Bihl wanted the jury to draw, however, for she argues testimony from Loucks about his previous drug-related encounters with Manuel should have been admitted because it "tended to disprove that it was [Bihl] — *rather than Manuel* — who possessed, transported, and intended to sell the methamphetamine." (Italics added.) Bihl's assertion in her reply brief that admission of Loucks's testimony "would not have run afoul of the prohibition on using 'prior bad acts' " because it would have shown Manuel "had the motive, opportunity, and intent to possess the methamphetamine, either for personal use or for sales," is unpersuasive. Evidence of prior bad acts is admissible to prove motive, intent, or opportunity only if those matters are at issue. (Evid. Code, § 1101, subd. (b); *People v. Fuiava* (2012) 53 Cal.4th 622, 667 (*Fuiava*); *People v. Pitts* (1990) 223 Cal.App.3d 606,

15

830-831.) Since Manuel's motive, intent, and opportunity were not at issue at Bihl's trial, testimony from Loucks on those matters would not have been admissible.

In sum, although Bihl was not able to elicit from Loucks all of the testimony she desired, she was able to cross-examine and recross-examine him thoroughly about his involvement in the events leading up to her convictions. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (*Delaware v. Fensterer* (1985) 474 U.S. 15, 20.) In making the evidentiary rulings challenged on appeal, the trial court did not violate Bihl's constitutional right to confront adverse witnesses or to present a complete defense.

C.     *No Cumulative Effect of Error Requires Reversal*

Finally, Bihl argues the cumulative effect of the trial court's errors in failing to give the jury a unanimity instruction and restricting her cross-examination of Loucks deprived her of a fair trial. We have rejected the two claims of error on the merits and also concluded any assumed instructional was harmless. There was thus no cumulative prejudicial effect of error requiring reversal. (*People v. Linton* (2013) 56 Cal.4th 1146, 1197; *Fuiava*, *supra*, 53 Cal.4th at pp. 692, 733; *People v. Mercado* (2013) 216 Cal.App.4th 67, 93.)

16

DISPOSITION

The order suspending imposition of sentence and granting probation is affirmed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

BENKE, J.

17